**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Marvin SMITH and James Smith,**
**Defendants-Appellants.**

**No. 15507.**

United States Court of Appeals
Sixth Circuit.

April 7, 1965.

Scott H. Ray, Jr., Lebanon, Hopkins, Hopkins, Wilson & Morrissey, Cincinnati, Ohio, of counsel on brief for James Smith.

Eugene D. Smith, Cincinnati, Ohio, for Marvin Smith.

Arnold Morelli, First Asst. U. S. Atty., Cincinnati, Ohio, Joseph P. Kinneary, U. S. Atty., Cincinnati, Ohio, on the brief for appellee.

Before MILLER, CECIL and EDWARDS, Circuit Judges.

CECIL, Circuit Judge.

This is an appeal by defendants-appellants, James Smith and Marvin Smith, from a conviction in the United States District Court for the Southern District of Ohio on all counts of a six-count joint indictment charging possession and sale of narcotics in violation of Section 174, Title 21, U.S.C. and Sections 4704(a) and 4705(a) of Title 26, U.S.C. It is alleged in the indictment that the first three counts grew out of a transaction on February 25, 1963, and that the transaction, upon which counts four, five and six were based, occurred on March 1, 1963. The appellants were tried jointly to a jury but they have filed separate briefs on this appeal.

The charges are based on sales of heroin to Jack Cohen, a government informer, on the dates above mentioned. On each occasion, Jack Cohen made a contact with James Smith by telephone and by appointment met him and purchased the heroin. Prior to the purchase Cohen was searched by officers and given money with which to make the purchase. Special Agent Ginetz rode in the trunk of Cohen's car and heard the conversations, at the time of the transactions, between Cohen and James Smith.

On February 25th, James Smith entered Cohen's car and it was agreed that James Smith would sell him one-half of a "spoon" of heroin for $60. Officers Mulligan and Robish, of the Cincinnati Police Department, saw James Smith enter Cohen's car. Cohen and James Smith drove to Greenwood Avenue, in Cincinnati, and entered a second-floor apartment. A man named Steve and the appellant Marvin Smith were in the apartment.

Steve left the presence of the other persons and while he was gone, Marvin Smith produced some cocaine which was used by Cohen, and James and Marvin Smith. Steve returned with a hypodermic needle. Marvin Smith stepped out of the apartment and returned with a couple of "caps" of heroin and handed them to James Smith. Cohen and James Smith both used some of the heroin and Cohen stated that he would buy some. The two then left in Cohen's car for Lincoln Heights, Ohio, to get some heroin. James Smith dropped Cohen off, drove away and then returned and picked up Cohen. In the car James Smith handed Cohen a package of heroin and Cohen gave him the money. They returned to the apartment where they found Marvin Smith. Cohen and James Smith each took an injection of heroin. James Smith

and Marvin Smith excused themselves and went into an adjoining room where Cohen could see money passing between them. Between February 25th and March 1st, Cohen obtained three more capsules from Marvin Smith.

On March 1st virtually the same procedure was followed. James Smith entered Cohen's car at Smith's Alaska Avenue apartment. They drove to Lincoln Heights and parked in front of a night club. There they met Marvin Smith. Cohen went into a drugstore to purchase a hypodermic needle. While he was gone, James and Marvin Smith carried on a conversation which Ginetz could hear. The subject of the conversation was narcotics. James Smith said that they should see Cohen take an injection, on the theory that police do not use narcotics. Marvin Smith said he had a whole box of "nails," that is, hypodermic needles. James Smith then went into the drugstore and gave Cohen a package of heroin. Cohen had previously given James Smith $75 in the car. They then drove to a house on McIntire Street. After they went into the house Marvin Smith stepped outside and returned with a package of hypodermic needles. James Smith and Cohen took injections of heroin.

The principal assignment of error on behalf of Marvin Smith relates to the admission into evidence of conversations between James Smith and Cohen, not in the presence of Marvin Smith, which involved Marvin Smith in the narcotics traffic. It is contended that testimony of criminal acts and conversations by and between James Smith and Cohen not in the presence of Marvin Smith, but involving him, could not be admitted in evidence in the absence of a conspiracy. No conspiracy was charged in this case.

The evidence detailed above in connection with the transactions of February 25th and March 1st show at least that Marvin Smith was an aider and abetter, if not a full fledged principal. The trial judge properly instructed the jury on aiding and abetting.

We are of the opinion that the evidence, exclusive of the testimony to which objection is made, is sufficient to warrant the jury in finding that James and Marvin Smith were engaged in a joint venture of selling narcotics. This being true, the conversations between James Smith and Cohen and their acts in furtherance of the joint venture were admissible.

In United States v. Pugliese, 153 F.2d 497 (CCA 2 1945), the defendant was convicted of possessing distilled spirits without having revenue stamps affixed thereto. No conspiracy was charged in the indictment. Certain declarations made by the defendant's wife were admitted into evidence. The Court said at page 500:

"The last point is the judge's refusal to direct the jury not to use against Pugliese the declarations of his wife to the policeman. The fact that the couple was not indicted for conspiracy, was irrelevant in determining the competency against him of any thing she might say. American Fur Company v. United States, 2 Pet. 358, 365, 7 L.Ed. 450; Tuckerman v. United States, 6 Cir., 291 F. 958, 970; Gooch v. United States, 10 Cir., 82 F.2d 534, 536, 537. That depended upon whether what she said was a step in a venture to which both were parties. If it was, it was admissible in any prosecution or in any civil action; if it was not, it was as incompetent in a prosecution for conspiracy as anywhere else, although it appears impossible to disabuse prosecutors of the contrary belief. As we said in Van Riper v. United States, (2 Cir.,) 13 F.2d 961, 967: 'When men enter into an agreement for an unlawful end, they become ad hoc agents for one another, and have made "a partnership in crime." What one does pursuant to their common purpose, all do, and, as declarations may be such acts, they are competent against all.' "

See also, United States v. Annunziato, 293 F.2d 373, C.A. 2; Williams v. United States, 289 F.2d 598, C.A. 9; and Fuentes v. United States, 283 F.2d 537, C.A. 9.

 Other claims made on behalf of Marvin Smith concerning the quantum of testimony required to take the case to the jury and to sustain a guilty verdict are without merit. In considering a motion of a defendant for acquittal, the trial judge must consider the evidence in the light most favorable to the United States. United States v. Grimes, 332 F.2d 1014, 1016, C.A. 6; United States v. Decker, 304 F.2d 702, 705, C.A. 6; United States v. Berkley, 288 F.2d 713, 716, C.A. 6; Battjes v. United States, 172 F.2d 1, 5, C.A. 6. There was ample direct evidence against Marvin Smith to warrant the jury's verdict of guilty.

Finally, it is argued on behalf of Marvin Smith that his conviction cannot stand without the testimony of informer Cohen, and that Cohen's testimony should not be accepted because he was a disreputable narcotic violator and was promised benefits for his cooperation. This Court has held in numerous cases that the character of an informer does not disqualify him as a witness but his character may be considered in relation to his credibility. United States v. Baxter, 342 F.2d 773, C.A. 6; United States v. Cooper, 321 F.2d 456, 458, C.A. 6; and United States v. Walker, 320 F.2d 472, 475, C.A. 6, cert. den. 375 U.S. 934, 84 S.Ct. 339, 11 L.Ed.2d 266. See also, Puentes v. United States, 319 F.2d 581, 582, C.A. 5; United States v. Countryman, 311 F.2d 189, 191, C.A. 2; and United States v. Vittoria, 284 F.2d 451, 454, C.A. 7.

Several questions pertaining to the admission of evidence are argued on behalf of the appeal of James Smith. These are all without merit. Evidence of a similar nature has been previously admitted in narcotics cases and upheld by this Court. Likewise, it has been held that the use of an informer, as Cohen was used in this case, does not constitute entrapment. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; United States v. Baxter, 342 F.2d 773, C.A. 6; Haynes v. United States, 319 F.2d 620, C.A. 5; United States v. Lile, 290 F.2d 225, C.A. 6; United States v. Lauer, 287 F.2d 633, C.A. 7; and Walker v. United States, 285 F.2d 52, C.A. 5.

Another assignment of error is that the appellant James Smith was denied due process of law because he was indicted by the Grand Jury without having a preliminary hearing. This question has also been passed upon by this Court. We have held that a preliminary hearing is not essential to due process of law. See Dillard v. Bomar, 342 F.2d 789, C.A. 6, and cases cited therein. See also, United States ex rel, Kassin v. Mulligan, 295 U.S. 396, 400, 55 S.Ct. 781, 79 L.Ed. 1501, and Goldsby v. United States, 160 U.S. 70, 73, 16 S.Ct. 216, 40 L.Ed. 343.

The judgment of the District Court is affirmed as to both appellants.