UNITED STATES of America,
Appellee,

v.

Enriquito ALSONDO et al., Defendants-Appellants.

Nos. 997, 998, 999, Dockets 73-1297,
73-1466, 73-1467.

United States Court of Appeals,
Second Circuit.

Argued June 22, 1973.

Decided July 13, 1973.

On Rehearing Nov. 14, 1973.

George J. Bellantoni, White Plains, N. Y., for appellant Feola.

Selig Lenefsky, New York City, for appellant Alsondo.

Joseph I. Stone, New York City, for appellant Rosa.

Paul H. Silverman, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., for the Southern District of New York; John D. Gordan, III, John W. Fields, Jr., Richard J. Davis, Jed S. Rakoff, Asst. U. S. Attys., on the brief), for appellee.

H. Eliot Wales, New York City, Albert J. Gaynor, New Rochelle, N. Y., amicus curiae.

Before FRIENDLY, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

After a jury trial in the United States District Court for the Southern District of New York before Charles L. Brieant, Jr., J., appellants Enriquito Alsondo, Henry Rosa and Ralph Feola were convicted on charges that they had assaulted federal narcotics agents, while the latter were engaged in performance of official duties, in violation of 18 U.S.C. § 111, and that they had conspired to violate that provision, 18 U.S.C. § 371. Alsondo was also convicted on a third count charging the unlawful carrying of a deadly weapon during commission of a felony, in violation of 18 U.S.C. § 924(c)(2).[1] For reasons which follow, we reverse all convictions under the conspiracy count and dismiss that charge; we reverse the substantive assault conviction of Feola and direct that the indictment as to him be dismissed; we reverse the substantive assault conviction of Rosa and remand as to him; we affirm the convictions against Alsondo on the two substantive counts against him.

The facts may be stated briefly. On August 21, 1971, Agent Hall, while working in an undercover capacity, met Michael Farr[2] through an informer, at which time Farr promised to sell Hall a kilo of heroin supplied through appellant Ralph Feola. Ten days later, and accompanied by appellant Rosa, Farr met Hall and the informer, now joined by Agent Lightcap also acting in an undercover capacity. The five proceeded to an apartment on West 68 Street in Manhattan, where the agents were to purchase a half kilo of heroin for $17,000; Agent Hall had a "flash-roll" of cash with him, which he showed Rosa. When the group arrived at the apartment, Alsondo let them in. Agent Lightcap was given custody of the money and remained in the living room while Alsondo, Rosa and Farr ushered Hall and the informer into the bedroom. Alsondo pointed to packages of white powder, which he identified as the narcotics. (Upon subsequent testing, the substance proved to be powdered sugar.)

In rapid succession, Farr and Rosa left the bedroom; the informer requested a scale to "test" the substance the agents believed to be heroin; Alsondo left the bedroom, and Agent Hall, after opening a closet door and discovering a man bound and gagged,[3] followed Alsondo. Walking into the hallway, Agent Hall saw Agent Lightcap at the opposite

---

1. Alsondo was sentenced to three years on the substantive assault count (count two), and to eight years on the deadly-weapon count (count three), to run concurrently with each other and, according to Judge Brieant's recommendation, with Alsondo's present confinement under a state sentence; imposition of sentence on the conspiracy count (count one) was suspended, but Alsondo was given five years on probation, to commence upon expiration of his sentences on the other counts. Rosa was sentenced to concurrent three-year terms on counts one and two. Feola was sentenced on count one to four years, and on count two to three years on probation consecutive with his imprisonment, coupled with a $3,000 fine.

2. Co-defendant Farr was indicted, tried with the three appellants, and convicted on counts one and two. He was sentenced at a later date under the provisions of the Youth Corrections Act, 18 U.S.C. § 5005 et seq. His appeal is pending, but as yet unargued.

3. The man was later identified as Nilo Tanderone, the lessor of the apartment.

end, facing Hall; Alsondo stood between them, facing Lightcap. Hall saw Alsondo reach behind his back and begin to pull a revolver from his waistband. Hall shouted a warning to Lightcap and identified the pair as federal agents; the two then subdued Alsondo after a scuffle and handcuffed him. Agent Lightcap thereupon walked into the living room and saw Rosa, who rushed toward him and shoved him in an apparent attempt to flee. Rosa was apprehended as was Farr, who had remained in the kitchen. Upon subsequent inspection of the premises, appellant Feola was discovered hiding in a closet and was arrested. At the time of arrest, Feola possessed a small telephone book containing the phone numbers of the West 68 Street apartment, of Farr and of Alsondo.[4]

The conspiracy count was submitted to the jury on the theory that an unlawful agreement among the four co-defendants could be inferred from the acts committed and circumstances as described above: The Government argued that the four had agreed to bilk the agents by fraudulently selling them sugar for $17,000 and had further agreed (or had foreseen the probable need) to rob the agents at gunpoint should the victims discover the swindle and attempt to thwart it. The district judge instructed the jury that proof of specific knowledge of the official identity of the assault victims was not required to establish a conspiracy to violate 18 U.S.C. § 111. He said:

[I]t is not necessary for the government to prove that the defendants or any of them knew that the persons they were going to assault or impede or resist were federal agents. It's enough, as far as this particular element of the case is concerned, for the government to prove that the defendants agreed and conspired to commit an assault.

In so instructing the jury, the district judge appears to have relied on a line of cases beginning with United States v. Lombardozzi, 335 F.2d 414, 416 (2d Cir.), cert. denied, 379 U.S. 914, 95 S.Ct. 261, 13 L.Ed.2d 185 (1964), which hold that such knowledge or scienter is not a necessary element of the *substantive offense* under section 111. See, e. g., United States v. Ulan, 421 F.2d 787, 788 (2d Cir. 1970); United States v. Montanaro, 362 F.2d 527 (2d Cir.) (per curiam), cert. denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966).[5]

The question remains, however, whether proof of such scienter is nevertheless necessary to convict of *conspiring* to violate section 111. In United States v. Crimmins, 123 F.2d 271 (2d Cir. 1941), we held that while knowledge that stolen securities had passed through interstate commerce was not a required element of the substantive offense under the statute there involved, such knowledge was a necessary element of proof of the crime of conspiring to cause stolen securities to be transported in interstate commerce. In a much-quoted passage, Judge Learned Hand stated:

While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one

---

4. Later, while in custody, Feola made allegedly false exculpatory statements to an agent and to an Assistant United States Attorney. He argues that the statements should have been suppressed under *Miranda*, but, in view of our disposition, we need not consider the question. Nor need we decide whether the district judge abused his discretion in denying a severance to appellant Rosa.

5. In analogous situations, we have held that specific knowledge of factual elements that confer federal criminal jurisdiction is not required for conviction of various substantive offenses. For example, as to knowledge of interstate transportation of stolen property, see, e. g., United States v. Tannuzzo, 174 F.2d 177, 180 (2d Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949); as to knowledge of the federal capacity of officials to whom a bribe is proffered in violation of 18 U.S.C. § 201 (b)(1), see United States v. Jennings, 471 F.2d 1310, 1312 (2d Cir.), cert. denied, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed. 2d 395 (1973).

cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past.

123 F.2d at 273. See also United States v. Sherman, 171 F.2d 619, 624 (2d Cir. 1948), cert. denied, 337 U.S. 931, 69 S. Ct. 1484, 93 L.Ed. 1738 (1949). We have frequently reaffirmed this distinction. E. g., United States v. Vilhotti, 452 F.2d 1186, 1189 (2d Cir. 1971), cert. denied, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972) (conspiracy to buy, receive or possess chattels stolen from interstate commerce); United States v. Jacobs, 475 F.2d 270, 282 (2d Cir. 1973), petition for cert. filed, 41 U.S.L. W. 3596 (U.S. Apr. 30, 1973) (No. 72–1469) (conspiracy to deal in stolen securities which have moved or are to move interstate).

■ The *Crimmins* rationale has been criticized,[6] and it has been pointed out that if the federal interest involved in such statutes—e. g., the use of the mails, interstate transportation—were viewed "not as an element of the respective crimes but frankly as a basis for establishing federal jurisdiction," [7] then much of the problem before us would disappear. However, although the National Commission on Reform of Federal Criminal Laws has proposed this change,[8] Congress has not yet acted upon it. Absent legislative change, the recognition that specific knowledge of factual circumstances conferring federal jurisdiction is unnecessary to proof of the substantive offense under such statutes but is required for proof of conspiracy remains very much the law in this circuit and, apparently, elsewhere as well.[9]

■ On this view, the conspiracy convictions before us cannot stand. It is true that we have found no case squarely raising the question whether scienter is required to convict for conspiring to violate 18 U.S.C. § 111. This is not surprising; most people—even those not inclined to be law-abiding—would not agree to assault a federal officer except perhaps as incident to another, more serious crime. But the dearth of direct authority only emphasizes the great number of analogous cases already cited.[10] As applied to the crimes before us, *Crimmins* and its progeny mandate

6. Developments in the Law—Criminal Conspiracy 72 Harv.L.Rev. 920, 938–39 (1959); I Nat'l Comm'n on Reform of Federal Criminal Laws, Working Papers 389 (1970).

7. ALI, Model Penal Code § 5.03, Comment, at 112 (Tent.Draft No. 10, 1960). No difficulty would in that event arise when the mails were actually used or a state line crossed in fact, whether or not this was within the contemplation of the parties; nor would there be a difficulty when this circumstance is planned, whether or not it actually has occurred. In situations where the jurisdictional circumstance neither exists nor was in contemplation of the parties, it would be clear that jurisdiction simply cannot be affirmed. Id.

8. Final Report of the Nat'l Comm'n on Reform of Federal Criminal Laws, in Hearings before the Subcomm. on Criminal Laws and Procedures of the S. Comm. on the Judiciary, 92d Cong., 1st Sess., pt. 1 (1971), at 224.

9. See cases cited in Model Penal Code § 5.03, Comment, at 111 n. 55; United States v. Barnes, 383 F.2d 287, 290–293 (6th Cir. 1967), cert. denied, 389 U.S. 1040, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968) (conspiracy to travel interstate or cause such travel to promote unlawful activity in violation of 18 U.S.C. § 1952); Nassif v. United States, 370 F. 2d 147, 152 (8th Cir. 1966) (conspiracy to convert goods from interstate commerce); cf. Pereira v. United States, 347 U.S. 1, 12–13, 74 S.Ct. 358, 98 L.Ed. 435 (1954) (conspiracy, inter alia, to use mails to defraud). But see United States v. Roselli, 432 F.2d 879, 891–892 (9th Cir. 1970), cert. denied, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) (conspiracy to violate § 1952; scienter unnecessary).

10. See also United States v. Hall, 342 F. 2d 849, 852 n. 4 (4th Cir.), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), where the court strongly implied that scienter is a necessary element under 18 U.S.C. § 372, making it unlawful to "conspire . . . to injure [any officer of the United States] in his person or property on account of his lawful discharge of the duties of his office."

the view that specific knowledge of the official federal capacity of assault victims must be proved to establish conspiracy to violate section 111, though such proof is unnecessary to convict for the substantive offense. It might be possible to distinguish the *Crimmins* line of authority on the ground that the interest of the federal government in protecting its officials against physical attack is so strong, cf. Ladner v. United States, 358 U.S. 169, 173–175 & n. 3, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), that prosecutions under the general conspiracy statute may nonetheless be maintained even in the absence of specific anti-federal intent, at least when an assault has actually occurred. We do not believe, however, that the thrust of existing precedent can be so easily disregarded. Furthermore, requiring proof of scienter for a conspiracy to deal in stolen securities but not for a conspiracy to violate section 111 would create an anomaly: Federal prosecution of the former crime is made more difficult although the investigative resources of the federal system may be indispensable for coping with a large multi-jurisdiction conspiracy, cf. Developments in the Law —Criminal Conspiracy, supra note 6, at 938–39, while federal prosecution of the latter conspiracy is facilitated, although it is an offense likely to be localized and more amenable to control through state law enforcement systems.

 Accepting the controlling precedents somewhat reluctantly, we must conclude that the instruction to the jury on the conspiracy count was erroneous. Although no exception was taken to the charge—indeed, no mention of the issue is made in the briefs submitted to us, nor was the question pursued at oral argument until we raised it from the bench[11]—we nonetheless believe that the charge constituted "plain error," Fed.R. Crim.P. 52(b), which we should notice sua sponte. Where there is a failure to charge an essential element of the offense, the error almost invariably affects "substantial rights" within the meaning of the rule. See United States v. Fields, 466 F.2d 119, 121 (2d Cir. 1972); United States v. Massiah, 307 F.2d 62, 70–71 (2d Cir. 1962) (Hays, J., concurring), rev'd on other grounds, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). And we note that improper jury charges under section 111 (particularly relating to elements of scienter) have been a fertile source for judicial willingness to invoke the "plain error" rule. E. g., United States v. McKenzie, 409 F.2d 983, 985–986 (2d Cir. 1969) (dictum); see United States v. Young, 464 F.2d 160, 164 (5th Cir. 1972); cf. United States v. Rybicki, 403 F.2d 599, 602 (6th Cir. 1968) (indictment charged obstruction, by threat of force, of IRS agents engaged in performance of their duties in violation of 26 U.S.C. § 7212 (a)). Moreover, appellants do argue on appeal that the evidence of conspiracy was insufficient as a matter of law. While their focus is more general, it is quite clear from an examination of the record that the evidence was insufficient on the issue of scienter and that directed judgments of acquittal should have been granted when motions for that relief were timely made. Certainly, the necessary scienter could not be properly imputed to the alleged conspirators on the ground that they could reasonably have anticipated that the victims of their planned assault might be federal agents. Compare United States v. Corallo, 413 F.2d 1306, 1326–1327 (2d Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969) (conspirator knew that the likelihood of use of interstate phone calls was great); Nassif v. United States, supra note 9, at 153 of 370 F.2d (knowledge of interstate origin may be implied from proof of conspiracy so broad that conspirators were indifferent to the source of the goods).

11. We observe, in passing, that although the point was squarely posed from the bench, we have received no request from the Government to submit a supplemental brief, nor have we been favored with any correspondence directing us to any authority contrary to the result we reach.

To the contrary, it is altogether unlikely that would-be swindlers would knowingly select federal officers as the targets of their fraudulent scheme or would knowingly assume even the most remote risk of such occurrence.

Having concluded that no conspiracy prosecution can be maintained on the facts of this case, we turn to the substantive convictions. Relying on Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the trial judge submitted the substantive assault charge against Feola to the jury solely on the theory that while he committed no act of force himself—having been in a closet throughout the events in question—if he had nevertheless joined with Alsondo and the others in an unlawful conspiracy, then as a co-conspirator he might be held responsible for criminal acts committed in furtherance of the unlawful agreement. Id. at 647, 66 S.Ct. 1180. Since the judge evidently and, we think, rightly believed that this was the only basis upon which the jury could properly convict Feola of the substantive offense, his conviction must be reversed and the charge dismissed where the predicate conspiracy conviction cannot stand.

■ Likewise, the substantive conviction against Rosa must be reversed. The district judge submitted this count to the jury on two alternative bases. The first authorized the jury to convict Rosa

> based on his own actions, if you find that he raised his hand against the agent . . . and moved toward the door and did so wilfully and intentionally with the purpose of resisting arrest or assaulting the officer or in any way impeding or interfering with his duties.

There was sufficient evidence, if believed, to establish commission of an assault or an otherwise prohibited act by Rosa. Lightcap identified himself to Rosa as a federal agent, thus foreclosing

any contention of even momentarily lawful resistance, cf. United States v. Heliczer, 373 F.2d 241, 248–249 (2d Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967), or at least permitting the jury to find otherwise. Rosa thereafter lifted his hand menacingly, as though to shove Lightcap, and did in fact shove him—both acts sufficient to constitute a crime under section 111. See, e. g., United States v. Bamberger, 452 F.2d 696, 699 (2d Cir. 1971), cert. denied, 405 U.S. 1043, 92 S. Ct. 1326, 31 L.Ed.2d 585 (1972). Nevertheless, our reversal turns on the judge's alternative instruction, again grounded on *Pinkerton,* supra, which permitted the jury to convict Rosa of the substantive crime

> by reason of the actions of Alsondo, if you find that Alsondo assaulted the federal officers or either of them in furtherance of the conspiracy, . . . and while Rosa was a member of the conspiracy. . . .

Since we have no way to determine on which theory the jury did in fact convict, we must reverse the conviction on this count. See Mills v. United States, 164 U.S. 644, 649, 17 S.Ct. 210, 41 L.Ed. 584 (1897); Nicola v. United States, 72 F.2d 780, 787 (3d Cir. 1934). As the evidence was sufficient to convict on the assault count even in the absence of the erroneous instruction, however, we do not order dismissal but remand for a new trial.

■ Alsondo's conviction on the substantive assault count stands in a wholly different posture. There is no good reason to believe that his conviction was tainted by any erroneous alternative instruction, for none was given.[12] His contention that, in other respects, the evidence was insufficient to permit the jury to find guilt beyond a reasonable doubt is wholly unpersuasive. Alsondo challenges the testimony that he had attempted to draw his revolver on Agent

---

12. The judge charged that:
 Insofar as concerns Alsondo, he may be found guilty on the substantive count, Count Two, if it is shown that he assaulted a federal agent, either Lightcap or Hall.

Lightcap in the hallway, but this was a question of credibility for the jury. He further argues that Agent Lightcap, facing appellant in the hallway, was never put in fear of battery by any act of Alsondo's. However, Agent Hall testified that he had shouted a warning to his colleague, and Lightcap testified that he was placed in fear of bodily harm as a result of the warning. In any event, the jury could infer that from his own observations, Lightcap had perceived Alsondo's acts as constituting an immediate threat of physical injury.[13]

The conspiracy convictions are reversed and the conspiracy count is dismissed as to all appellants; the substantive assault conviction of Feola is reversed and the count is dismissed as to him; the assault conviction of Rosa is reversed and remanded for further proceedings consistent with this opinion; the conviction of Alsondo on two substantive counts is affirmed.

## ON PETITION FOR REHEARING

FEINBERG, Circuit Judge:

On July 13 of this year, we reversed in part a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., J., convicting Enriquito Alsondo, Ralph Feola and Henry Rosa of assault on federal narcotics agents, in violation of 18 U.S.C. § 111, and conspiracy to violate that provision, 18 U.S.C. § 371.[1] At issue now is our disposition of the cases

of Feola and Rosa. With respect to the conspiracy convictions, we reversed and dismissed the count. Regarding the substantive assault convictions, we also reversed; we dismissed as to Feola, but remanded Rosa's case for a new trial.[2] Our prior opinion sets forth the underlying facts.

The Government has sought a rehearing of the reversal of the assault convictions of Feola and Rosa. (The Government does not at this time challenge the doctrine of United States v. Crimmins, 123 F.2d 271 (2d Cir. 1941), under which we dismissed the conspiracy counts; that part of the judgment therefore stands.) We asked for, and received, briefs from both sides on the issues. For reasons stated below, we grant the petition for rehearing and affirm Feola's and Rosa's convictions of assault against federal agents.

■■ In our prior opinion, we assumed that reversal of the conspiracy convictions for failure to prove knowledge of the intended victims' official character necessarily vitiated the substantive assault convictions since a *Pinkerton* charge had been given.[3] Upon the further reflection induced by the Government's petition, however, we believe that this conclusion was not justified on the facts of this case. It is well established in this and in other circuits that the admissibility of acts of a joint criminal venturer against his partner in crime "rests on basic principles of agency and not on the presence of a conspiracy count."[4]

---

13. With respect to count three—charging possession of a deadly weapon during commission of a felony—Alsondo argues that since "the gun possession is not a federal offense, the third count cannot stand alone." Since Alsondo's conviction on the principal substantive count is affirmed, the argument is without merit, and we affirm his conviction on the third count.

1. Alsondo was also convicted under 18 U.S.C. § 924(c)(2) of unlawfully carrying a deadly weapon during the commission of a felony.

2. Alsondo's conspiracy conviction was likewise reversed and the charge dismissed; his convictions on the substantive counts were, however, affirmed.

3. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), held that a conspirator was liable for the reasonably foreseeable crimes committed by a co-conspirator in furtherance of and during the venture.

4. See, e. g., Davis v. United States, 409 F.2d 1095, 1100 (5th Cir. 1969); United States v. Messina, 388 F.2d 393, 394–395 (2d Cir.), cert. denied, 390 U.S. 1026, 88 S.Ct. 1413, 20 L.Ed.2d 283 (1968); United States v. Jones, 374 F.2d 414, 418 (2d Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 40, 19 L.Ed.2d 95 (1967); United States v. Smith, 343 F.2d 847, 849 (6th Cir.), cert. denied, 382 U.S. 824, 86 S.Ct. 55, 15 L.Ed.2d 69 (1965).

United States v. Granello, 365 F.2d 990, 995 (2d Cir. 1966) (Friendly, *J.*), cert. denied, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 1458 (1967). Similarly, the out-of-court declarations of a co-conspirator are admissible against a defendant where joint venture is shown by the evidence, although conspiracy is not alleged in the indictment. United States v. Annunziato, 293 F.2d 373, 378–381 (2d Cir.), cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed. 2d 134 (1961); United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945). Cf. United States v. Jacobs, 475 F.2d 270, 281 n. 25 (2d Cir. 1973).

 At various points in the charge, the lower court referred to a conspiracy to assault a federal agent or to violate 18 U.S.C. § 111, as well as to a conspiracy to obtain the buyers' money by fraud or force.[5] Therefore, on these facts the jury's finding against defendants on the conspiracy count has a controlling effect on the substantive counts of assaulting a federal officer. With regard to the latter, the jury must already have found an agreement—involving Feola—to assault a victim (who turned out to be a federal officer) or to take money from him by fraud or force. In the absence of such a finding, the jury could not have convicted Feola since both the evidence and the charge pointed to Alsondo and Rosa as the only possible assailants. Rosa's case parallels Feola's except that the jury could, pursuant to the charge, have found the former personally rather than vicariously guilty of assaulting a federal agent.[6] This finding of criminal agreement is sufficient, on general agency principles, to sustain defendants' liability for their co-conspirators' actions. Under *Pinkerton,*

supra, there are circumstances where a co-conspirator may be held liable as part of a conspiracy of indefinite scope and duration for a specific crime which he should have foreseen but perhaps did not. This is not such a case. The jury's finding makes clear that Feola and Rosa were part of a plot to commit the crime that actually occurred. On such facts, the finding of guilt as to each should stand.[7]

We therefore grant the Government's petition for a rehearing and affirm the assault convictions of Feola and Rosa. The judgment is modified in accordance with this opinion.[8]

5. Whereas the former theory is untenable in light of *Crimmins,* the latter is clearly viable. This juxtaposition of correct and erroneous instructions does not necessitate reversal since, on any sensible view of the matter, the jury on these facts could not have found a conspiracy to assault a federal officer without in addition finding a conspiracy simply to assault or to get the money by fraud or force. United States v. Jacobs, 475 F.2d 270, 282–284 (2d Cir. 1973).

6. The record supports a conviction of Rosa as principal, if this in fact occurred.

7. P. Johnson, The Unnecessary Crime of Conspiracy, 61 Calif.L.Rev. 1137, 1146 (1973).

8. We have also considered the remaining arguments raised by defendants Feola and Rosa in their original briefs and find no reason why the assault convictions should not be affirmed.