UNITED STATES of America,
Appellee,

v.

John Paul De MARCO et al.,
Defendants-Appellants.

Nos. 488, 489, 604 and 605, Dockets 73–1768,
73–2567, 73–2678 and 73–2679.

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1973.

Decided Dec. 12, 1973.

Richard Insogna, Amsterdam, N. Y., for appellant John Paul De Marco.

John S. Hall, Warrensburg, N. Y., for appellants Joseph D. De Marco and Richard W. Snyder.

Lawrence P. Justice, Albany, N. Y., for appellant Stephen F. De Marco.

Joseph R. Brennan, Asst. U. S. Atty., N. D. N. Y. (James M. Sullivan, U. S. Atty., N. D. N. Y., on the brief), for appellee.

Before KAUFMAN, Chief Judge, and SMITH and OAKES, Circuit Judges.

KAUFMAN, Chief Judge:

 John Paul De Marco, Joseph D. De Marco, Stephen F. De Marco, and Richard Snyder appeal from convictions for possession of stolen property (18 U. S.C. 659 and 2) and for conspiracy (18 U.S.C. 371) entered after a jury·trial before Judge Foley. The defendants were sentenced to 18 months imprisonment on each of two counts, to run concurrently. On appeal, the appellants raise numerous claims of error, but extended discussion is warranted only to decide whether Snyder voluntarily consented to a warrantless search.[1] For

---

1. This issue is raised on appeal by all four appellants. Although, as we note below, Snyder was the only appellant involved in the discussion immediately preceding the search, all appellants have standing to question the legality of the search because possession of the seized goods is an essential element of the crime charged. Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) ; Jones v. United States, 362 U.S. 257, 263–264, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ; United States v. Mapp, 476 F.2d 67, 72–73 (2d Cir. 1973) ; United States v. Pastore, 456 F.2d 99 (2d Cir. 1972). Cf. Combs v. United States, 408 U.S. 224, 227 n. 4, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972).

the reasons stated below, we find that the consent was valid. But, because of an oversight in the trial judge's charge going to an essential element of the conspiracy count, which regrettably was not called to his attention by counsel—nor, even raised by them on appeal—we reverse the conspiracy convictions of all four appellants. The convictions on the substantive count are affirmed.

## I.

■ Since the voluntariness of the consent is to be determined from the totality of circumstances, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), we proceed to the relevant facts surrounding the search.[2] At 7:10 a. m. on October 9, 1971, in the course of their normal patrol, Officers Burns and Waters of the Troy, New York, Police Department, stopped a heavily overloaded U-Haul rental van on a back road in North Troy. While Burns and Waters remained in the police car, the driver of the rented truck, Richard Snyder, left the vehicle and approached the officers. During the ensuing discussion, which from all accounts was amiable, Burns asked to see Snyder's driver's license and vehicle registration. Snyder was unable to produce either document. The record is unclear, but at some point during this encounter, the officers left their police car and continued to converse with Snyder while all three stood between the police car and the truck. When the officers asked to see the truck's cargo, Snyder agreed without hesitation and promptly opened the unlocked van himself. As Snyder lifted the van's back door, 30 rolls of ⁵⁄₁₆ inch copper rods, weighing approximately 7500 pounds, were readily visible to the police.[3] The officers immediately asked where he had acquired the cargo. Instead of a direct response, Snyder answered only that he had gotten the truck from Stephen De Marco.[4]

■ After the discovery of the copper rods, Officer Waters observed two men—Joseph and John Paul De Marco—seated in the truck's passenger cabin. Several additional officers were then summoned and the three occupants of the van were requested to accompany the police to the station house "to clear up this mess."[5] At the police station, Snyder was arrested for driving without a license, New York Vehicle and Traffic Law § 401, subd. 4, McKinney's Consol. Laws, c. 775, and the De Marcos for misuse of a vehicle. Subsequent investigation by local police and the FBI established that the 30 rolls of copper rods found in the van were part of a shipment from the Rome Wire Company in Rome, New York, intended for delivery to the Simplex Wire Company in North Berwick, Maine. When the shipment arrived at Simplex 33 rolls were missing.

At trial the government introduced statements given to FBI agents by each of the defendants—after receiving *Miranda* warnings—in which they individually denied complicity in the theft but conceded that they were each offered approximately $200 for moving the truck a short distance and that this caused them to suspect that the cargo was stolen. During the trial the defendants objected

---

2. Judge Foley interrupted the trial to conduct a hearing on defendants' motions to suppress evidence. Fed.R.Crim.P. 41(e). The police testimony at the hearing essentially duplicated the evidence presented at trial. None of the defendants testified either at the hearing or the trial.

3. It should be noted that the officers did not enter the truck at the scene of the stopping.

4. The government established at trial that Stephen De Marco had rented the truck at a service station in Waterford, New York, at 8 p. m. on October 7, 1971.

5. Richard Snyder was driven to the police station by Officers Burns and Waters in the police car. Joseph and John Paul De Marco travelled in the truck, which was driven by Patrolman Lamberson. Although the men were not arrested for vehicle violations until after they arrived at the police station, Judge Foley properly found that the officers' request, and the circumstances of the trip to the station house, placed the appellants in a custodial status. *See* Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968).

to the introduction of the copper rods in evidence on the ground that they were the products of an illegal search. They claimed in their application to suppress made in the district court, as they do on appeal, that Snyder's consent was obtained under duress because he was under arrest at the time of the search and the officers were, therefore, duty-bound to inform Snyder of his right to refuse to submit to the search.[6]

 If Snyder had in fact been arrested prior to the search, this case would have presented a close question for determination. The issue was explicitly reserved by the Supreme Court in Schneckloth v. Bustamonte, *supra*, 412 U.S. at 240 n. 29, 93 S.Ct. 2041. Since Judge Foley, however, clearly credited the evidence of Officers Burns and Waters, who testified fully on the circumstances in issue, that the arrest did not occur until after the occupants of the truck arrived at the police station, we need not reach the more difficult ques-

tion as to the standard to be applied in determining the validity of a consent to search given by a person who has been placed in custody.[7]

 *Schneckloth* teaches that in noncustodial search cases, the subject's knowledge of his right to refuse to give his consent is one factor among the totality of circumstances the trial judge must weigh in determining whether the consent has been "freely and voluntarily given," Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Although it is conceded that Snyder was not apprised of his rights prior to the search, the record clearly reveals that the events surrounding the search at the vehicle stopping do not manifest any coercion. On the basis of testimony by Officers Burns and Waters, and the statement Snyder gave to the FBI, Judge Foley properly rejected appellants' contentions of duress and explicitly found that Snyder freely opened the truck.[8]

---

6. The appellants have not, either in the lower court or on appeal, questioned the propriety of the police action in initially stopping the truck, and in requesting Snyder's license and registration. The government relies on New York Vehicle and Traffic Law § 401, subd. 4, which authorizes officers to demand production of vehicle registrations and operator's licenses. Although appellants do not claim that the officers abused their authority in this case, we note that since the stopping of a moving vehicle involves some curtailment of freedom of movement, Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), at least one court has ruled that in the absence of probable cause to believe that a violation of the vehicle code exists, an officer may not stop an individual vehicle for inspection purposes, *see* Commonwealth v. Swanger, 307 A.2d 875, 879 (Pa.1973). *Cf.* United States v. Turner, 442 F.2d 1146 (8th Cir. 1971). We need not decide that question, however, for we believe from the officers' testimony concerning the heavily overloaded appearance of the truck they could reasonably have concluded the truck was a safety hazard.

7. We note, however, that although "the mere fact that a suspect is under arrest does not negate the possibility of a voluntary consent," United States ex rel. Lundergan v. McMann, 417 F.2d 519, 521 (2d Cir. 1969),

the close relationship between custody and coercion requires the government to meet a heavier burden of proof before consent given by an arrestee will be deemed voluntary. United States v. Mapp, *supra*, 476 F.2d at 78.

8. The appellants claim also that Judge Foley unduly restricted cross-examination of government witnesses. Our examination of the record indicates the contrary and discloses that the patient trial judge afforded ample latitude to the appellants. It is a well-established principle that the trial judge has broad discretion in determining the permissible scope of cross-examination—and we do not perceive any indication that the trial judge even came close to the line of abusing his discretion. *See, e. g.,* Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); United States v. Kahn, 472 F.2d 272, 280–281 (2d Cir.) cert. denied 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). The record discloses that Judge Foley's rulings during the cross-examinations of the police officers, railroad officials, and expert witnesses, at the very most, sought to avoid repetition of testimony already elicited. Accordingly, we reject this contention. We note, moreover, that the other issues raised by appellants are meritless.

## II.

Although none of the issues raised by appellants reveals infirmities in the procedures underlying the convictions, our review of the record indicates a serious defect in the judge's charge which compels us, *sua sponte*, to reverse the convictions of all four appellants on the conspiracy charge. In instructing the jury on the elements of the conspiracy count, Judge Foley stated that the government had the burden of proving beyond a reasonable doubt that the defendants conspired to possess goods that had been stolen from an interstate shipment, knowing such goods to be stolen. Later in the charge, when it was unclear whether he was referring only to the substantive count or to both counts, he said:

I charge you that the evidence in this case need not establish—this is important to keep in mind—that any of the defendants, any or all of them actually knew the goods mentioned constituted a part of an interstate shipment. That means that the government does not have to prove knowledge on the part of the defendants that these goods, if you so find were in their possession, that the defendants knew that they came from an interstate shipment.

This instruction is, of course, entirely proper with regard to the substantive crime of possession of goods stolen from interstate commerce. But, as we held in United States v. Fields, 466 F.2d 119, 121 (2d Cir. 1972), a necessary component of conspiracy to violate 18 U.S.C. 659 is the knowledge not only that the goods were stolen, but that they were stolen from an interstate shipment. The distinction between the scienter component of the conspiracy and substantive charges arises from the notion that although an individual may commit some crimes unwittingly, he cannot conspire to commit a specific crime unless he is aware of all the elements of the crime. In Learned Hand's classic phrase,

While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past.

United States v. Crimmins, 123 F.2d 271, 273 (2d Cir. 1941).

Failure to charge an essential element of the offense, in most instances, affects a defendant's substantial rights within the meaning of Fed.R. Crim.P. 52(b). United States v. Alsondo, 486 F.2d 1339 (2d Cir. 1973); United States v. Fields, 466 F.2d 119, 121 (1972). In this case, the absence of an instruction that knowledge of the interstate character of the goods was an essential component of the conspiracy charge was exacerbated by a contrary, albeit proper, instruction on the substantive count. Accordingly, although counsel inexcusably did not except to the charge nor question its validity on appeal, we cannot avoid noticing the plain error.[9] *See* On Lee v. United States, 343 U.S. 747, 750 n. 3, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

Our reversal on the conspiracy count, however, does not affect the propriety of the convictions on the substantive count. *See* United States v. Alsondo, *supra, on petition for rehearing* 486 F.2d at 1346. From the evidence adduced at trial the jury clearly could have found both that the copper rods in appellants' possession were in fact stolen from an interstate shipment and that all the appellants believed the goods they possessed were stolen—even if appellants may not have known the interstate character. Judge Foley's charge on the substantive count was free of fault and therefore the jury's verdict will stand.

9. It is with great reluctance that we must perform a task that is rightly counsel's responsibility. In fairness to Judge Foley, we add that it is virtually certain that if counsel asked him to give the appropriate charge, or called the omission to his attention, the experienced trial judge would have readily complied.

Since the trial court imposed identical concurrent sentences on the substantive and conspiracy counts for all four appellants and we today have reversed the conspiracy convictions, it is appropriate that we remand the case to the district court for review of sentence. We do so because of the possibility that conviction on both counts might have affected the punishment set for each. *See* United States v. Mancuso, 485 F.2d 275 (2d Cir. 1973); United States v. Mapp, *supra*, 476 F.2d at 82; *cf.* United States v. Febre, 425 F.2d 107, 113 (2d Cir.) cert. denied, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970). Of course, we do not imply any views as to whether the sentences should be modified in any respect. We leave the sentences to be imposed entirely to the discretion of the trial judge.