**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eulus ZIMMERMAN,
Defendant-Appellant.**

**No. 74–1337.**

United States Court of Appeals,
Sixth Circuit.

Dec. 13, 1974.

George E. Lee, Detroit, Mich., for defendant-appellant.

Ralph B. Guy, Jr., U. S. Atty., Robert D. Sharp, Asst. U. S. Atty., William C. Ibershof, Detroit, Mich., for plaintiff-appellee.

Before CELEBREZZE and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is a direct appeal from Appellant's conviction on a one-count indictment for conspiracy to interfere with government agents in the performance of their official duties in violation of 18 U.S.C. §§ 111 and 371 (1969). The factual situation concerns a shoot-out between drug traffickers and undercover narcotics agents.

On July 24, 1973, Robert J. Dunn and Louis Antonucci, special agents with the Federal Drug Enforcement Administration, purchased a quantity of what was represented to be cocaine from James Martin. Martin had received the powdery substance from Appellant.

The substance, when tested, was found not to be cocaine. The agents arranged another meeting with Martin and demanded that they get a quantity of cocaine or that their money be returned. At this second meeting Martin received two telephone calls from Appellant. In the first call Appellant inquired whether Martin was in a trap. Martin indicated that he was. Appellant then asked Martin to provide him with the telephone number of an individual named "Cecil," whom Appellant would attempt to reach in order to help Martin. In the second conversation, Appellant told Martin that he had been unable to reach "Cecil" but that he would take care of everything.

Approximately forty-five minutes later, an unidentified male entered the bar from the rear entrance. This individual, who was wearing a large white Panama

hat, proceeded to walk from the back to the front of the bar. As he passed near the booth in which Antonucci, Dunn and Martin were seated, he turned toward the booth and stared intently at them. After staring in their direction for a brief period, the man nodded and left the bar by the front entrance.

Because the agents had become suspicious of the actions of the man in the white Panama hat, Dunn proceeded to follow this man. After exiting the bar by the front entrance, Dunn observed the man in the Panama hat getting into a 1970 Cadillac Eldorado. Dunn also observed from three to four other men in the 1970 Cadillac. After seeing the men in the Cadillac, Dunn returned to the bar and informed Agent Antonucci of what had transpired.

After a few moments had elapsed, and out of fear that the agents might attack him, Martin attempted to escape from the bar where the meeting was taking place. Agent Dunn caught Martin outside the front door. At this point, the man wearing the white hat and another man behind the Cadillac which Dunn had earlier observed began to shoot in Dunn's direction. Dunn shouted that he was a federal agent. More shots were exchanged, and Agent Dunn was struck in the leg by one of the shots. The assailants then fled by automobile.

Martin was arrested, but subsequently became a government witness and charges against him were dismissed. Martin testified that Appellant organized the agents' assailants, though Appellant was not present during the shootout.

■ The precise issue raised by this appeal is whether knowledge that the victim of an assault is a federal agent in the performance of his duties must be proven in a prosecution for violation of 18 U.S.C. § 371 for conspiring to violate 18 U.S.C. § 111. We conclude that knowledge of a federal agent's status is a necessary element. Knowledge in this context includes the possession of facts which would lead a reasonable person to believe that the victim is likely to be a law enforcement officer, as well as direct knowledge of the victim's status.

This Court has not spoken to the necessity of proof of scienter in a prosecution for conspiring to assault a federal officer.[1] We have, however, determined that proof of scienter is necessary to sustain section 371 convictions for conspiracy to transport stolen goods moving in interstate commerce, in violation of 18 U.S.C. § 2314 (1970); United States v. Garafola, 471 F.2d 291 (6th Cir. 1972), and for conspiracy to violate federal anti-gambling laws under the Interstate Travel Act, 18 U.S.C. § 1952 (1961). United States v. Barnes, 383 F.2d 287 (6th Cir. 1967), cert. denied, 389 U.S. 1040, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968). *Barnes* involved three defendants who were convicted of conducting gambling operations and of conspiring to conduct such operations in violation of the Interstate Travel Act. This Court overturned the conspiracy convictions as to two of the defendants because they did not know that cashing an out-of-state check could make their local enterprise a federal offense. We added that this lack of knowledge would not excuse one who actually committed the overt act, nor would it excuse persons who reasonably could be expected to know of the commission of the forbidden act by their partner. In *Barnes,* we quoted with approval the standard enunciated in Twitchell v. United States, 313 F.2d 425, 429 (9th Cir. 1963), for sufficiency of evi-

---

1. This Court has, however, on three occasions, dealt with cases involving the substantive violation of section 111 or former section 254. Sparks v. United States, 90 F.2d 61 (6th Cir. 1937); United States v. Rybicki, 403 F.2d 599 (6th Cir. 1968); United States v. Kiraly, 445 F.2d 291 (6th Cir. 1971). It appears that in this Circuit knowledge of the officer's status must be proven in prosecutions for the substantive violation of section 111 in those instances where actions, such as resisting arrest, derive their criminality from the fact that they are committed against a law enforcement officer.

dence to find a co-conspirator in violation of a federal statute:

"We think that, in a case of this kind, the evidence must show in relation to Twitchell that either:

"1. he *directly* agreed to the illegal interstate transportation, or *directly* agreed to a scheme which could not be consummated without illegal interstate transportation, or *directly* agreed to a scheme in which it was known that the liklihood [sic] of illegal interstate transportation was *great* (it being understood that such agreement need not be overt, and may be inferred from circumstantial evidence; and that directness refers not to face-to-face dealings, but to the extent of his knowledge of the purpose and scope of the conspiracy); *or*

"2. he evidenced his indirect agreement by substantial participation in the scheme with *actual knowledge* of the proposed, or completed, illegal interstate transportation." (Emphasis in original.) 383 F.2d at 292–293.

We reaffirmed this conclusion in United States v. Garafola, 471 F.2d 291 (6th Cir. 1972), where defendants had been charged with conspiracy to steal a trailer-load of liquor moving in interstate commerce. In *Garafola* we quoted with approval the following rule stated in United States v. Cimini, 427 F.2d 129 (6th Cir. 1970), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970):

As for this conspiracy charge it was necessary to show that the conspiracy encompassed an anti-federal intent, or that its scope was sufficiently broad as to include an anti-federal intent, i. e., intent to steal from interstate commerce, or to steal goods without regard to their source. 427 F.2d at 130.

In *Garafola* we stated that "conceptually the federal crime of conspiracy does require proof of an intent, actual or implied, to violate a federal law." 471 F.2d at 291.

We perceive no reason why knowledge must be proven to establish a conspiracy to violate § 2314 or § 1952 but need not be proven to prove a conspiracy to violate § 111. In either case, an ingredient of the federal conspiracy charge is anti-federal intent.

The Second Circuit came to this conclusion in United States v. Alsondo, 486 F.2d 1339 (2d Cir. 1973), cert. granted sub nom., United States v. Feola, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974), which involved an assault arising out of an attempted narcotics purchase by undercover federal agents. Alsondo and three others were convicted of assaulting federal agents and conspiring to assault federal agents. The four drug traffickers did not know that they were dealing with federal agents. The Second Circuit reversed the conspiracy convictions, holding that specific knowledge of the official federal capacity of the intended assault victims must be proven to establish the alleged conspiracy although such knowledge was not necessary to convict for the substantive offense.[2] The Court grounded its decision on United States v. Crimmins, 123 F.2d 271 (2d Cir. 1941), which held that knowledge that stolen securities had passed through interstate commerce was a necessary element of the crime of conspiring to cause stolen securities to be transported in interstate commerce. The *Alsondo* court quoted with approval Judge Learned Hand's analysis in *Crimmins*:

While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past. 486 F.2d at 1342–1343 quoting 123 F.2d at 273.

█ In the instant case, viewing the evidence most favorably to the government, it appears that Appellant arranged for a group of men to rescue Martin from drug buyers who were demanding either "good dope" or the return of their money. No evidence was introduced

2. *See* text *supra* fn. 1.

that Appellant was aware of the official status of the drug buyers. Even Martin, the government's only witness against Appellant, testified that at all times prior to the agents' announcing their identity he believed them to be narcotics traffickers, not undercover agents.

We conclude that the judgment should be reversed, and the action is remanded to the District Court with directions that a judgment of acquittal be entered.