**UNITED STATES of America,**
**Appellee,**

**v.**

**Russell DICKERSON,**
**Defendant-Appellant.**

**No. 348, Docket 74–1914.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1974.

Decided Jan. 6, 1975.

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for defendant-appellant.

Michael Q. Carey, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John D. Gordan, III, Asst. U. S. Atty., on the brief), for appellee.

Before FRIENDLY, FEINBERG and GURFEIN, Circuit Judges.

FEINBERG, Circuit Judge:

Russell Dickerson appeals from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., J., convicting him of assaulting a federal officer and sentencing him to two years in prison. Appellant claims that the jury was improperly allowed to find him guilty on a theory of vicarious liability and that the judge erred in giving the jury a modified Allen charge. Since we agree with the first contention, the judgment must be reversed.

I

The facts relevant to the issues on appeal, as the jury could have found them, are as follows: In July 1973, at a fruit store in Harlem, appellant approached undercover agent Frank Balasz and offered to sell him a "machine gun" for $500.[1] The transaction soon began in the back seat of a nearby parked car when Balasz parted with $500 in cash. Balasz quickly discovered that the gun (actually an M–1 carbine) did not work properly. Julius Sykes, an alleged confederate of appellant in the front seat of the car, took the gun from Balasz, saying he could fix it. Balasz first bargained to lower the price, then tried to reclaim the gun from Sykes. But Sykes pointed it at Balasz, who promptly left the car. He unsuccessfully tried to recover the money from appellant, who by this time had it outside the car. Balasz again attempted to wrestle the gun from

Sykes. Appellant by then had obtained the car keys from another alleged confederate, Moses Young, and began to get into the driver's seat. Balasz and appellant struggled over the driver's door, and appellant struck Balasz on the shoulder. Then Young jumped on Balasz and a fight ensued. Balasz decided that he had gone through enough and, attempting to draw his gun, announced he was a police officer. The gun fell to the ground as the pummeling continued, and appellant and Young ran away. Shortly thereafter, appellant, Young and Sykes were all arrested and charged with assaulting a federal officer. 18 U.S.C. § 111.[2]

At trial, the Government argued that appellant could be convicted of assaulting a federal officer on either of two theories. The first—on which there was a sharp issue of fact—was that appellant, both alone and in conjunction with Young, had punched or struck Agent Balasz.[3] The other was that even if appellant, as he contended, never hit the agent, the assault upon Balasz was committed in furtherance of an unlawful criminal venture to which appellant belonged. The judge submitted the case to the jury on both theories. The latter furnishes the basis for appellant's principal contention on appeal.

II

Appellant argues, as indicated, that the jury was improperly allowed to find him guilty on a theory of vicarious liability. In considering this claim, it is well to remember some basic principles of criminal law. Ordinarily, a defendant cannot be convicted of a crime unless he personally participated in its commission. Such participation may take the limited form of "aiding and abetting," see 18

---

1. Balasz was a Special Agent of the Drug Enforcement Administration.

2. Sykes was charged in the same indictment as appellant, but he was admitted to a federal deferred prosecution narcotic addict program. If he completes this successfully, it is contemplated that the charges against him will be dismissed. Young was indicted separately

and was acquitted in a jury trial held shortly after appellant's trial.

3. That appellant did not know Balasz was a federal officer was, under our cases, irrelevant. United States v. Alsondo, 486 F.2d 1339, 1342 (2d Cir. 1973), cert. granted sub nom. United States v. Feola, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974), and cases there cited.

U.S.C. § 2, but even then it must be proved that the defendant consciously assisted the commission of the specific crime in some active way. Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949), citing United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938) (L. Hand, J.). This general philosophy of criminal liability is modified by the law of conspiracy, particularly the line of cases commencing with Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), upon which the Government principally relies here.

In *Pinkerton,* two brothers were charged with substantive violations of the Internal Revenue Code and with conspiring to violate the Code. The Court held that the substantive offenses were not merged into the conspiracy and that Walter and Daniel Pinkerton could each be punished for both the conspiracy and the substantive offense. Of more importance to this case, the Court also held that even though there was "no evidence to show that Daniel participated directly in the commission of" various substantive offenses, his conviction was proper because the jury must have found that he was a party "to an unlawful conspiracy and the substantive offenses . . were in fact committed in furtherance of it." 328 U.S. at 645, 66 S.Ct. at 1183.

In this case, Judge Brieant submitted to the jury a theory of vicarious liability based on conspiracy or joint venture. The judge told the jury in essence that it could convict appellant if it found that he was knowingly and wilfully part of "a joint criminal venture" and that the assault was committed in furtherance of its objective. The judge described the object of this possible "illicit criminal venture" as

> larceny by trick, false pretense, false promise or other means in violation of

the laws of the State of New York, that is, that the defendant Dickerson, acting jointly or as partner with Moses Young and Julius Sykes, was engaged in a criminal venture. That is, that they intended, after taking the money of Balasz and Carroll for the sale of a gun and ammunition, to keep both the money and the gun. If this was their intention, that would be larceny and anybody who does such a thing knowingly and willfully would be engaged in a criminal venture.

Defense counsel objected to this charge, but the judge declined to modify it.

We believe that this charge improperly allowed the jury to find defendant guilty. We put to one side whether a *Pinkerton* charge is ever proper when—as in this case—no conspiracy is charged in the indictment or the joint venture submitted to the jury has no federal nexus.[4] The fact is that *Pinkerton* does not justify affirming this conviction. Judge Brieant did not submit to the jury the issue whether there had been a conspiracy to assault a federal officer pursuant to which the assault occurred. Moreover, the Court indicated in *Pinkerton* that, in any event, a defendant could not be held vicariously liable for a crime that "was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." Id. at 648, 66 S.Ct. at 1184. The only alleged unlawful agreement submitted to the jury here was "larceny by trick, false pretense, false promise . . ." We do not think that the assaultive use of force is "a necessary or natural consequence" of an agreement to commit such larceny, although it might be were the agreement one to commit robbery.[5]

 Nor was the charge justified by our decision in United States v. Alsondo,

---

4. Cf. Nye & Nissen v. United States, supra, 336 U.S. at 619–620, 69 S.Ct. 766. We certainly do not encourage use of a vicarious liability charge in either instance. We also do not pass upon appellant's contention that the charge in this case did not adequately define the elements of larceny, thereby denying appellant due process of law.

5. See, e. g., 2 R. Anderson, Wharton's Criminal Law and Procedure §§ 507, 547, 559–60 (1957); Norris v. United States, 152 F.2d 808, 809 (5th Cir.), cert. denied, 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623 (1946); Mason v. Commonwealth, 200 Va. 253, 105 S.E.2d 149 (1958); Williams v. State, 124 Ohio St. 585, 180 N.E. 58 (1932).

486 F.2d 1339, 1346 (1973), on which the Government also relies. In that case, we reluctantly set aside convictions of three defendants for conspiring to assault a federal officer because, under the rule of this circuit, it was error not to charge the jury that defendants had to know that the persons they were conspiring to assault were federal officers.[6] Originally, we also reversed the convictions of two defendants on substantive counts because the judge had given to the jury what we initially characterized as a *Pinkerton* charge. We reasoned that reversal was required because the conviction for conspiracy, which was the "predicate" of convictions on the substantive counts, could not stand. 486 F.2d at 1345. On rehearing, the Government pointed out that the judge's charge had actually required that the jury find, in order to convict the defendants of conspiracy, that they had agreed to assault someone (who turned out to be a federal officer) or to obtain his money by force if fraud alone proved ineffective. On reconsideration, we agreed that the jury on these facts must have found either a conspiracy to assault the person who was attacked or a conspiracy to get money from him by fraud or force, if the latter became necessary. See 486 F.2d at 1347. Once again, however, we fail to see how this helps the Government. The charge of Judge Brieant in this case did not require the jury, in order to convict, to find an agreement to assault or to use force if trickery failed. The jury was told that it could find that the object of the joint venture was larceny, but force is not one of the elements of that crime.[7] In contrast, the force used and the assault committed in *Alsondo* were specifically contemplated by the unlawful agreement to which the defendants were

parties; i. e., defendants there "were part of a plot to commit the crime [of assault] that actually occurred." *Id.*

The jury, therefore, may have convicted appellant on the erroneous belief that his agreement to participate in a larceny without violence was enough to make him criminally liable for the later assault. Under the circumstances, we have no choice but to reverse and remand for a new trial.[8]

---

**6.** See United States v. Crimmins, 123 F.2d 271 (2d Cir. 1941), and cases cited in *Alsondo,* supra, 486 F.2d at 1343. The Government successfully petitioned for certiorari on this question in *Alsondo,* 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974), and the issue is now before the Supreme Court, sub nom. United States v. Feola, No. 73–1123, Argued Nov. 19, 1974, 43 U.S.L.W. 3305.

**7.** See authorities cited in note 5 supra.

**8.** On this disposition, it is unnecessary to consider appellant's objection to the modified "Allen charge" used by the court on the third day of jury deliberation. It would be better, however, for a trial judge not to tell a jury that he is "sure" the defendant would "prefer" resolution "one way or the other." We agree with appellant that most, if not all, defendants would rather have a hung jury than a guilty verdict.