**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harry J. RYBICKI, Defendant-Appellant.**

**No. 18276.**

United States Court of Appeals
Sixth Circuit.

Nov. 22, 1968.

G. Franklin Miller, Cincinnati, Ohio, court appointed, for appellant.

James W. Eardley, Asst. U. S. Atty., Grand Rapids, Mich., for appellee,

Harold D. Beaton, U. S. Atty., Grand. Rapids, Mich., on the brief.

Before O'SULLIVAN and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

Harry J. Rybicki appeals from judgment entered on a jury verdict, convicting him of violating § 7212(a) of Title 26, U.S.C. The information charged that on February 13, 1967, Rybicki, by threats of force, obstructed two officers of the Internal Revenue Service who were then engaged in the performance of their duties, seeking to collect from him income tax owed by him to the United States. His grounds of appeal are that the government's evidence was not sufficient to sustain the verdict, and that the District Judge erroneously failed to adequately instruct the jury as to the findings essential to a verdict of guilty.

We reverse on the second ground.

1) Sufficiency of evidence.

 From the proofs introduced, the jury could find the following:

Rybicki was indebted to the United States in the sum of $128.00 for additional income tax owed by him and his wife. He had discussed the matter with agents of the Internal Revenue Service between December, 1966, and February, 1967, and had promised to pay the delinquency, but failed to do so. On February 13, 1967, two officers of the Internal Revenue Service went to Rybicki's home in a rural area near Grand Rapids, Michigan, with the intention of collecting the tax debt or, failing to obtain payment, of seizing a 1960 Oldsmobile and a 1966 Ford pickup truck owned by Rybicki, therefrom to satisfy the mentioned indebtedness.

We continue by quoting recitals of the government's brief:

"At approximately 8:20 A.M. on February 12, 1967, Jesse and Forell went to the home of appellant and knocked at his door and received no response.

The two vehicles in question were parked in the Rybicki driveway. After knocking for several minutes without success, Agent Jesse prepared certain warning tags and warning notices which he gave to Agent Forell to post on the two vehicles in question, and a Notice of Seizure, which he folded in thirds and inserted between the outer door and its jamb. Forell immediately posted the vehicle as having been seized by the Internal Revenue Service in satisfaction of a tax delinquency.

"Several minutes elapsed and another attempt was made to obtain recognition at the residence without success. The two officers thereupon determined to remove the two vehicles in question to a storage location. Forell backed a government-owned vehicle, in which he and Jesse had traveled to the Rybicki residence, out of the driveway and into the street, and Jesse got into the truck, found the keys thereto in the ignition, and began backing it out of the driveway into the street. Jesse then looked up and saw the appellant, Harry Rybicki, standing in the doorway of the Rybicki residence. It appeared to him that Rybicki was standing either in his pajamas or his underwear and that he was holding a double-barreled shotgun in his right hand at about hip level. Jesse observed that Rybicki was holding in his left hand a piece of paper which he concluded was the seizure notice that he had inserted between the door and the door jamb. Jesse stopped the truck, turned off the motor and got out and began to approach the house. He identified himself and Forell, stating, 'We are with the United States Treasury Department.' Rybicki's reply was that he did not give a damn who Jesse and Forell were, he wanted them off his property and if they returned, he would give them a shot of hot lead. Frightened and intimidated, Jesse, together with Forell, who had gotten out of the government vehicle and had approached the house behind

Jesse and who heard Jesse's identifying comments and Rybicki's reply thereto, left the Rybicki premises and went into Grand Rapids, Michigan, a distance of a few miles."

Rybicki and his wife gave a different account of the relevant events. They said that their first knowledge of the activity of the Revenue Agents was when the wife heard the noise of the motor of the truck being moved by the agent. She aroused her sleeping husband and told him that somebody was backing his truck out of the yard. Rybicki describes his consequent conduct as follows:

"So I jumped out of bed and I run to the door and I hollered at them, and nobody answered. So I reached around to the gun rack and grabbed my gun and said, 'I told you to stop.'

"At that time, a fellow jumped out of the truck. So then he says to me, he said he was an Internal Revenue man. And I said, 'Well, just a minute till I get some clothes on.'

"So I set the shotgun down, I went back into the house, got dressed, and I come back out and there was nobody around. The vehicles still set in the yard, but they were gone with their vehicle."

It was undisputed that the Revenue Agents were in plain clothes and when Rybicki appeared at his door one of the officers said, "We are with the United States Treasury Department."

Appellant asserts that to be guilty of the offense charged it was necessary that he know that the men who were in the act of moving his truck were officers of the Internal Revenue Service and were then acting in their official capacity. He charges that the evidence did not meet the government's burden of proving such elements of the charged crime. We are of the opinion that, out of the conflicting accounts of the critical events, the jury, sole judges of the credibility of the witnesses could find that the government proved all elements of the crime. In testing the sufficiency of the case made by the government, the evidence is to be viewed in a light most favorable to it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1941); United States v. Decker, 304 F.2d 702, 705 (6th Cir. 1962).

2) The Court's instructions.

a) Knowledge as an essential to guilt.

The District Judge did not tell the jury that to be guilty of the charged offense, Rybicki had to know that the men were officers and were in the performance of their duties. Appellant's brief asserts:

"The court did not even mention that Mr. Rybicki should know that they were officers. The charge was fatally deficient in that it did not require the jury to find that the defendant knew the men were federal agents, knew they were performing official duties, and intended to obstruct officers as such in the performance of their duties. The jury was charged as though the crime were a regulatory offence instead of a true crime requiring *mens rea*."

The government resists the claim by asserting that knowledge by Rybicki that the Internal Revenue Agents were government officers performing official duties at the time of the alleged offense was not an essential element of the crime. We disagree.

To substantiate its argument in this regard, the government relies upon McNabb v. United States, 123 F.2d 848 (6th Cir. 1941); United States v. Wallace, 368 F.2d 537 (4th Cir. 1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1169, 18 L.Ed.2d 136 (1967); United States v. Montanaro, 362 F.2d 527 (2nd Cir. 1966), cert. denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed. 2d 144 (1966); and United States v. Lombardozzi, 335 F.2d 414, 10 A.L.R.3d 826 (2nd Cir. 1964), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964). These authorities may be distinguished from the case at bar by the fact that the offenses there involved would have been crimes regardless of the

person against whom they were committed. In *Montanaro*, the defendant was stopped by federal officers while driving his car. In resisting arrest, he struck one of the officers with his car. This would have been a crime whether or not the pedestrian was an officer. In *McNabb*, a federal officer was killed under circumstances that would have resulted in a murder charge regardless of who was killed. Here, if the car "thief" had not been an officer acting in an official capacity, Rybicki would have had the right to threaten and use reasonable force to prevent the theft of his property.

In United States v. Chunn, 347 F.2d 717, 721 (1965), the Fourth Circuit stated,

> "Concededly, there is a wide variance and lack of unanimity among the decisions as to whether *scienter* should be alleged and/or proved."

The line of cases holding that scienter is required stems from Pettibone v. United States, 148 U.S. 197, 204–207, 13 S.Ct. 542, 37 L.Ed. 419 (1893). This Court followed and relied upon Pettibone in Sparks v. United States, 90 F.2d 61, 63 (6th Cir. 1937), where a deputy marshal attempted to execute a search warrant for seizure of counterfeit molds alleged to be on defendant's premises. Defendant brandished an ax and prevented the officer from carrying on the search. On page 63 we said:

> "On a trial for resisting an officer it must be shown that the person resisted was an officer, and that the accused was aware of that fact. Pettibone v. United States, 148 U.S. 197, 205, 13 S.Ct. 542, 37 L.Ed. 419."

*Sparks* is analogous to the instant case in that the man searching for the molds would have no right to seize them from Sparks' premises and Sparks would have a right to prevent the seizure from his property unless the "searcher" was privileged by being an officer acting in the performance of his official duties. We are of the opinion that Pettibone v. United States, supra, and Morissette v. United States, 342 U.S. 246, 263, 273, 276, 72 S.Ct. 240, 96 L.Ed. 288 (1952) command a holding by us that an element of the crime charged to Rybicki was knowledge that the Internal Revenue agents were such and were engaged in performing their duty. We so hold.

b. Failure to request instructions.

■ Defendant's trial counsel did not proffer an instruction that the discussed scienter was an element of the crime; neither did he make objection by pointing to its absence when given an opportunity to do so following the Court's charge. The government accordingly asks us to employ Rule 30 F.R.Crim.P. to foreclose a relevant claim of error. We, moreover, may also employ Rule 52(b) to entertain the question if we are persuaded that substantial rights of Rybicki were affected by the lack of a charge on scienter.

■ *Generally* it is the duty of a District Judge to tell a jury what facts they must find before they can convict—that is, to instruct the jury as to the elements of the crime charged.

> "It is well settled that appellant had a right to a correct statement of the law from the court. It is of course the duty of the court to explain the law of the case to the jury." Thomas v. United States, 151 F.2d 183, 186 (6th Cir. 1945).

■ It is also *generally* true that such instructions must be given whether requested or not. *Thomas*, supra, intimates this, but even if this Circuit has not squarely announced such rule we recognize it to be of general acceptance. In United States v. Massiah, 307 F.2d 62 (1962), reversed on other grounds, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), Judge Hays, in concurring, said:

> "In a criminal case, the defendant is entitled to have the jury instructed on all the elements that must be proved to establish the crime charged. United States v. Gillilan, 288 F.2d 796 (2d Cir.), cert. denied, Apex Distributing Co. v. United States, 368 U.S. 821, 82 S.Ct. 38, 7 L.Ed.2d 26 (1961); Kelley v. United States, 107 U.S.App.D.C. 122, 275 F.2d 10 (1960).

"In the present case, the appellants raised no objection to the charge as given, see Rule 30, Federal Rules of Criminal Procedure, but the omission to charge an element of the offense is 'plain error' see Rule 52(b), requiring reversal even if the point was not raised below. Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Levy, 153 F.2d 995, 998–999 (3d Cir. 1946); Williams v. United States, 76 U.S.App.D.C. 299, 131 F.2d 21 (1942). 'In a criminal case a court should instruct on all essential questions of law involved in the case, whether requested or not.' Kreiner v. United States, 11 F.2d 722, 731 (2d Cir.), cert. denied, 271 U.S. 688, 46 S.Ct. 639, 70 L.Ed. 1152 (1926); see Morris v. United States, 156 F.2d 525, 527, 169 A.L.R. 305 (9th Cir. 1946). In United States v. Noble, 155 F.2d 315 (1946), the Third Circuit stated the governing considerations:

> 'We think it is self evident that a jury cannot perform its duty of determining the guilt or innocence of a defendant accused of a crime unless they know the essential elements of the crime which he is alleged to have committed. We think it equally self evident that the only appropriate source of that knowledge is the trial judge, whose traditional function has always included that of instructing the jury upon the law. It was because of the failure of the trial judge to give this necessary guidance to the jury that we recently reversed the judgment of conviction in United States v. Levy, 3 Cir., 1946, 153 F.2d 995. We deemed the error so fundamental that we took note of it even though the defendant had not requested the instructions.' 155 F.2d at 316–317."

■ Against this law we must consider whether the circumstances of this case call for exercise of our authority to reverse even though the missing instruction was not requested. We feel constrained to do so.

We read a colloquy which occurred early in the trial as defense counsel's aborted effort to have scienter treated as an element in the case. Discussing the issues that would appear, the Court said:

"THE COURT: In other words, the only basic issue in this case is whether or not the defendant, by threats of force, obstructed and impeded the plaintiffs, the named persons, from performing their duties?

"MR. GERSCH [Counsel for defendant]: The Court indicated for purposes of instructions earlier?

"THE COURT: Yes.

"MR. GERSCH: The question of knowledge here is one that I would—

"THE COURT: You will have to prepare your request on that. I don't know what you want. We will rule on it at the time.

"MR. GERSCH: Well, when you asked if the basic question is whether he did impede, knowing them to be officers or not, seems to be—

"MR. EARDLEY: Objection. That wasn't the Court's question, I think.

"THE COURT: That wasn't the Court's question.

"MR. GERSCH: If that is the sole resolution of the issue, then, no, there is no—

"THE COURT: Can you have any requests you may have available by 2:30, Mr. Gersch?

"MR. GERSCH: I will not have any requests, Your Honor. I am sure that the Court will instruct in accordance with the law."

We do not know why defense counsel failed to pursue the matter by requesting an instruction on the necessity of knowledge. The District Judge, in his instructions, said:

"It is conceded by the defendant that on February 13, 1967, Joseph L. Jesse and Gordon F. Forell were officers of the Internal Revenue Service of the Department of the Treasury of the United States of America.

"It is conceded by the defendant that on that date, the two men named were acting in an official capacity while at the Rybicki residence.

"It is conceded that in such official capacity, they were seeking payment of unpaid 1963 federal income tax which had been assessed against the defendant and his wife, Shirley A. Rybicki."

These concessions did not include one that Rybicki was *aware* of all these conceded facts on the morning that the officers started to move his truck. A jury, however, might not have observed such limitation upon the conceded facts.

The District Judge's instruction on the elements of the charged crime was:

"In order to establish the offense charged in the information, the government must establish by evidence to your satisfaction and beyond a reasonable doubt: First, that Gordon F. Forell and Joseph L. Jesse were agents of the Internal Revenue Service of the United States who, at the time certain alleged threats were made, were engaged in the performance of official duties; and, second, that the defendant made threats of the use of force against Joseph L. Jesse and Gordon F. Forell, and that such threats of use of force obstructed or impeded them in the performance of their duties."

Absent is the element of Rybicki's knowledge that Forell and Jesse were government agents engaged in their duties as such.

We feel this omission was not merely a technical procedural fault but could have visited substantial prejudice on Rybicki. There was evidence from which the jury could find that, in the critical moments involved, Rybicki was unsure who the men were and what they were

doing with his truck. Evidence showed that things had previously been stolen from his truck and from his premises. On one occasion, his automobile was stolen and later recovered by Grand Rapids police. He claimed that on the morning in question he was awakened by his wife's shouts that his truck was being backed out of the yard; that he went to his door and "hollered" but nobody answered; and that he then grabbed his gun and observed one man jump out of the truck and say that "he was an Internal Revenue man."[1] He said he told the man, "Well, just a minute till I get some clothes on," but when he dressed and returned, they were gone.

The jury could find that Rybicki may not have connected the officer's words, "Treasury Department" with his tax deficiency. He had just been awakened from sleep. There was proof that while in the service in Korea he had a brain concussion which left scar tissue on the back of his head and so affected him that up to a couple of years before this event he had been annually hospitalized for from three to four months and was regularly prescribed "a tranquilizer to slow me down a little bit." The jury could be persuaded by Rybicki's testimony this his actions were motivated by a fear that his truck was being stolen but, under the Court's above quoted instruction, they could nevertheless find him guilty.

The law and the special facts of this case persuade us to reverse. We should make clear that we are not announcing a rigid and mechanical rule that failure of a trial judge to instruct on all elements of a crime will call for reversal, notwithstanding that no request therefor was proffered as required by Rule 30, F.R.Crim.P.

Reversed and remanded for a new trial.

1. The officers testified only that one of them answered Rybicki's inquiry by saying, "We are with the United States Treasury Department."