**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert PLUMMER,**
**Defendant-Appellant.**

No. 85–3329.

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 27, 1986.

Decided May 2, 1986.

Charles E. Lowrey, Charles M. Huston, Akron, Ohio, for defendant-appellant.

Patrick McLaughlin, U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before JONES and WELLFORD, Circuit Judges, and GILMORE, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Appellant Robert Plummer was convicted of assaulting a federal officer in the performance of her duties, a violation of 18 U.S.C. § 111 (1982). He appeals that conviction arguing that the trial court erroneously failed to instruct the jury on the significance of his lack of knowledge that his victim was a federal official. We disagree and affirm.

**I**

The charge arose out of events that occurred on October 30, 1984, when IRS Agent Carol Givens attempted to serve Plummer with two administrative summonses. IRS Supervisor Peter Petit had given the summonses to Givens, who was visibly pregnant, for service by her in hopes that Plummer would respond to her call at his door. Petit had attempted service several months earlier and, although he claimed he saw Plummer in the house, Plummer did not answer his knock.

There were no eyewitnesses to what occurred and the testimony of Givens and Plummer was in direct contradiction on many points. Givens gave the following account:

She arrived at Plummer's house at 8:10 a.m. When Plummer answered the door Givens said she had car trouble and then asked if he was Robert Plummer; he said he was. She presented the summonses, attempted to put them in his pocket, and then reached through the doorway and put the papers on a table saying, "You've been served Mr. Plummer. You have been served." Plummer responded, "No I haven't," and pushed the papers out the door. Givens conceded that she did not identify herself as a federal agent.

After dropping the summonses, Givens left the doorway and walked down the driveway toward her car, which was parked on the street in front of Plummer's house. Plummer followed her outside, shouting after her. When she reached her car she looked up to see Plummer driving toward her in his Cadillac. He was driving across his lawn at 30 m.p.h., as if to broadside her car, and stopped within inches of her car's bumper. Givens said she was "scared to death" by the approach of Plummer's vehicle. She entered her car and locked the door. Plummer came towards Givens on foot, tried to open the driver's door, then grabbed the side mirror and acted "very angry, hostile." She started the car and drove away.

Plummer followed in his car. Several cars separated them on the road initially, but Plummer came as near as one car behind and was attempting to pass. She made a U-turn and he followed. Givens then saw that he was directly behind her; she ran a red light and drove to a police station where she sought refuge.

Plummer's testimony controverted Givens' account in several respects. He testified that after Givens asked his name she reached in her coat pocket. He felt something was wrong and turned away, shouting to her to leave. Plummer said he recalled the violent murder of a neighbor and

[*] The Honorable Horace W. Gilmore, United States District Court for the Eastern District of Michigan, sitting by designation.

he feared Givens might have been attempting something similar. Plummer admitted he drove across the lawn but said he and his son occasionally did that as an alternative to using the driveway. He said he drove no faster than 5 m.p.h. and stopped 30 feet from Givens' car. Plummer said he went to Givens' car "to have some conversation" and find out "what was going on here." He said he motioned for her to roll down her window and merely laid his hand on the mirror. Plummer admitted the pursuit but claimed he only wanted to get her license number.

## II

18 U.S.C. § 111 states in part:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined ... or imprisoned ... or both.

Plummer did not contest that Givens was a designated federal official or that she was engaged in the performance of her official duties. Rather, he presented two other defenses to his prosecution. One was his claim that no assault occurred. The second defense, and the one involved in this appeal, was grounded in his uncontroverted assertion that he did not know that Givens was a federal agent.

Plummer does not contend that knowledge of the victim's official status is an element of the offense. This position is foreclosed by *United States v. Feola*, 420 U.S. 671, 684, 95 S.Ct. 1255, 1263, 43 L.Ed.2d 541 (1975), where the Supreme Court stated that "[a]ll the statute requires is an intent to assault, not an intent to assault a federal officer." *See also United States v. Boone*, 738 F.2d 763, 765 (6th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 528, 83 L.Ed.2d 416 (1984). Plummer's defense is based on the Court's qualification of that general statement in *Feola:*

> We are not to be understood as implying that the defendant's state of knowledge is never a relevant consideration

under § 111. The statute does require a criminal intent, and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of *mens rea*. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.

420 U.S. at 686, 95 S.Ct. at 1264. This court recognized and applied this principle before the *Feola* decision in *United States v. Rybicki*, 403 F.2d 599 (6th Cir.1968). In *Rybicki* the defendant was awakened in the morning to find unidentified persons driving one of his trucks out of his yard. He went out to the yard brandishing a shotgun and threatening the strangers. *Id.* at 600–01. This court held that the trial court had erred in failing to instruct on the defendant's lack of knowledge because, "if the car 'thief' had not been an officer acting in an official capacity, Rybicki would have had the right to threaten and use reasonable force to prevent the theft of his property." *Id.* at 602.

Plummer advances a similar argument here. He contended before the trial court that his actions were justified by his mistaken but honest belief that he was ejecting a trespasser who he feared might have intended him harm. He submitted a proposed instruction to that effect, which was rejected by the court. The judge instead charged the jury as follows as to the elements of the offense:

> First is that Mrs. Givens was a Federal agent designated in the law.

> Second, that Mrs. Givens, at the time of the incident, was engaged in the performance of her official duties;

> Third, that Mr. Plummer forcibly assaulted Mrs. Givens;

And fourth, that the assault, if committed, was willful and without legal excuse.

The court further defined the terms in each of these elements, but did not elaborate on the meaning of the phrase "without legal excuse."

 Plummer's claim on appeal, in essence, is that the court refused to present his theory of the case to the jury. A trial court commits reversible error in a criminal case when it fails to give an adequate presentation of a theory of defense. *United States v. Garner,* 529 F.2d 962, 970 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976). As the *Garner* court held, "[e]ven when the supporting evidence is weak or of doubtful credibility, its presence requires an instruction on the theory of the defense." *Id.* The Fourth Circuit has stated the rule another way: a court "is certainly not required to instruct the jury on a defense the theory of which is not even supported by the testimony of the defendant adduced at trial." *United States v. Williams,* 604 F.2d 277 (4th Cir.), *cert. denied,* 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 381 (1979). We agree.

■ The alleged assault in this case occurred not while Givens was at the door but when Plummer drove his car at Givens, attempted to enter her car, and pursued her. Plummer presented no evidence, and did not contend during his testimony, that he feared Givens or had any reason to regard her as a trespasser after she had left his door and gone to her car. Even if the jury were to believe Plummer's testimony that he thought Givens was attempting to enter his house while at his door, by the time he drove toward her in his car, she was retreating. In short, at the time Plummer is alleged to have assaulted Givens, there was no evidence of a trespass or other threat to justify Plummer's actions if Givens had been a private citizen.

■ Plummer's legal theory is correct; an honest mistake of fact regarding a victim's official status can negate the criminal intent required by section 111 where the

assault would be justified if the victim were not an official. Had the evidence in this case given any support to the application of this theory we would hold that Plummer was entitled to the requested instruction. That is not this case. Here the trial court was correct in ruling that no reasonable jury could have found Plummer's acts of assault to be a justified response to an apparent trespass.

The judgment below is AFFIRMED.