MEDICAL RESOURCES, LTD., ROBERT F. PLUMMER, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MED-SCIENCES, LTD.-I, SCIENCE & INDUSTRY RESOURCES, INC., TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Medical Resources, Ltd. v. Commissioner
Docket Nos. 8952-89, 10109-89
United States Tax Court
T.C. Memo 1992-35; 1992 Tax Ct. Memo LEXIS 40; 63 T.C.M. (CCH) 1833; T.C.M. (RIA) 92035; January 16, 1992, Filed *40 Decisions will be entered for respondent. Rick Drake, for petitioners. J. Scott Broome, for respondent. RUWE, Judge.
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined adjustments of partnership items for the 1983 taxable year as follows: Medical Resources, LTD.
Item
Claimed Amount
Amount as Adjusted
Rent/equipment lease
$ 30,000
-0-
Other deductions-management fee
3,000
-0-
Property eligible for
investment tax credit
254,800
-0-
Med-Sciences, LTD.-I
Item
Claimed Amount
Amount as Adjusted
Rent/equipment lease
$ 120,000
-0-
Other deductions
15,135
-0-
Property eligible for
investment tax credit
792,400
-0-
The issues for decision are: (1) Whether Medical Resources, Ltd. and Med-Sciences, Ltd.-I (sometimes referred to as "the partnerships") were engaged in an activity with a profit objective; and, if so (2) whether the partnerships are entitled to investment tax credits with respect to the computer systems; (3) whether the partnerships must amortize the prepaid lease payment over the life of the lease; and (4) whether the partnerships are entitled to a deduction for management fees and other expenses as claimed *41 on the partnerships' Federal income tax returns. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. At the time the petitions were filed, the partnerships' principal place of business was in Stow, Ohio. Medical Resources, Ltd., and Med-Sciences, Ltd.-I, reported income on an accrual basis. The issues in these cases arise out of claimed investment tax credits and expense deductions related to the partnerships' purported computer system leasing activities. The partnerships were ostensibly formed for the purpose of subleasing computer systems to doctors. The partnerships initially entered into agreements to lease the systems from a company called Charta Financial Group, Inc.[1] The computer system was called "The Perfect You". The Perfect You consisted of a software package combined with a Hewlett-Packard computer, printer, disk drive, graphics tablet, desk, and accessories. The software was designed to assist in treating a particular patient by providing a nutritionally balanced diet and exercise program. *42 The software in the Perfect You system was developed by Jeffrey Kogan. In the course of its development, the program was employed at the medical practice of Mr. Kogan's brother. Mr. Kogan transferred the software to his solely owned corporation, Data-Ease, Inc. (Data-Ease). Data-Ease received an offer to purchase the Perfect You software from Di-Med Computer Systems, Inc. (Di-Med). Mr. Kogan agreed to a sales price of $ 5,000 per software package, $ 2,000 in cash, and the rest in promissory notes payable at $ 100 per month per software package. Mr. Kogan also arranged for Di-Med to purchase the systems Hewlett-Packard hardware through Data-Ease for $ 5,860 per unit. The total system cost to Di-Med was $ 10,860. Di-Med then entered into an agreement to sell Perfect You systems to Charta Financial Group, Inc. (Charta), for $ 198,000 each. Charta entered into agreements to purchase 5 systems. These agreements provided for a payment of $ 30,000 for each system upon execution of the sale agreements. The balance of the purchase price was represented by recourse notes payable over 8 years for the remaining $ 168,000 cost of each system purchased. It was these systems that were *43 leased to the partnerships. Medical Resources, Ltd., and Med-Sciences, Ltd.-I, were formed and promoted by Robert F. Plummer (petitioner). Prior to serving as promoter and general partner in the partnerships, petitioner had worked as a registered investment representative and as a mutual fund advisor. During the years at issue, petitioner promoted various tax shelter investments including: Structured Shelters, Inc., Cambridge Corporation's Children's Classics (a master recording shelter), and Century Concepts Video Game Masters (a video cartridge shelter). [2]
In his involvement with the last two of these promotions, petitioner worked for Leo Roussell, who was a promoter. Mr. Roussell was also president of Di-Med from whom Charta purchased the Perfect You systems. Petitioner also participated in an organization called Compow'r, International *44 which was a Charta representative for Structured Shelters, Inc. Petitioner had no expertise in the fields of computers, medicine, or nutrition. Petitioner solicited and sold interests in Medical Resources and Med-Sciences. Documents prepared with respect to the solicitation and sales of partnership interests included a "Private Placement Memorandum", "Subscription Agreement, Signature Page and Power of Attorney", "Offeree Questionnaire", "Offeree Representative Questionnaire and Investor Acknowledgement", "Limited Partner Signature Page", and some additional promotional material. The Private Placement Memorandum for each partnership was 52 pages long, of which 14 pages dealt solely with tax aspects of the investment. The additional promotional material stressed the tax advantages, stating that additions to the tax would be avoided, that a $ 5,000 investment would generate an investment tax credit of $ 2,800, and an operating loss of $ 4,835 in the first year. This material also stated that there were no preference items for alternative minimum tax purposes, and that there were no promissory notes, letters of credit, or debt. Seventeen investors bought limited partnership interests *45 in Medical Resources, and 35 investors became limited partners in Med-Sciences. Petitioner served as the general partner for Medical Resources. The general partner in Med-Sciences was Science and Industry Resources, Inc., a Texas corporation which was organized on April 7, 1983. Petitioner was the only employee of Science and Industry Resources, Inc., and he and entities he controlled were the only shareholders. The Agreements of Limited Partnership for both partnerships were executed by petitioner on December 31, 1983. The record does not contain evidence that any of the limited partners ever executed the partnership agreements or any of the related subscription documents. The Certificates of Limited Partnership were never filed with the appropriate county recorder's office as required by Ohio law for either partnership. In December 1983, the partnerships entered into agreements to lease five Perfect You systems from Charta, four by Med-Sciences, and one by Medical Resources. Charta paid Science and Industry Resources, Inc., $ 12,000 as a commission for the leasing of the four systems to Med-Sciences. Charta executed the agreements to purchase the Perfect You systems from *46 Di-Med on the same date it executed the system leases with the partnerships. The leases between the partnerships and Charta were for a term of 5 years and provided for "fixed rent" in the amount of $ 30,000 per system to be paid to Charta upon execution of the lease. The leases also provided that Charta receive 41.67 percent of gross revenues earned through subleasing the systems in the first year. For subsequent years, the leases provided that the partnerships were required to pay "percentage rent" in the amount of 50 percent of gross revenues. Med-Sciences paid Charta $ 60,000 of the "fixed rent" in December 1983 and the other $ 60,000 in January 1984. Medical Resources paid Charta $ 27,000 in January 1984. The partnerships made no other payments to Charta in 1983 or 1984. Med-Sciences also made payments to Science and Industry Resources, Inc., in December 1983, in the amounts of $ 12,000 and $ 7,500. On January 31, 1984, Charta elected to pass through the investment tax credit on each respective system to the partnerships. Neither Medical Resources nor Med-Sciences took delivery or possession of the leased systems prior to January 1, 1984. None of the systems were subsequently *47 subleased by the partnerships. Two systems were accepted by doctors for a trial period, but they were subsequently returned. One unit was also placed in the office of Mr. Hostelley on the campus of Baldwin Wallace College for demonstration purposes. Mr. Hostelley was petitioner's accountant and an accounting instructor at Baldwin Wallace College. Neither partnership reported any gross receipts for tax years 1983 through 1988, except for $ 350 reported by Med-Sciences, in taxable year 1985. For taxable year 1983, Medical Resources, which leased one system from Charta, issued Schedules K-1 reflecting property eligible for investment tax credit of $ 254,800. Med-Sciences, which leased four systems, issued Schedules K-1 reflecting property eligible for investment tax credit of $ 792,400. On April 13 and 14, 1989, respondent issued Notices of Final Partnership Administrative Adjustment disallowing claimed investment tax credits and expense deductions. OPINION The first issue for decision is whether Medical Resources Ltd., and Med-Sciences Ltd.-1, were engaged in an activity with the objective of earning a profit and were therefore entitled to the claimed deductions and investment *48 tax credits. Petitioner bears the burden of proof on all pertinent items -- profit objective, useful life, fair market value, placement in service, and others. See Rule 142(a); [3]Welch v. Helvering, 290 U.S. 111 (1933). All claimed deductions and credits are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred in carrying on any trade or business. Similarly, section 212 allows a deduction for expenses paid or incurred in transactions entered into for the production of income. The claimed advanced rental, management fees, and other expenses must come within these statutory provisions to be deductible. Section 38 allows a credit for investment *49 in "section 38 property" -- generally tangible personal property which is subject to the allowance for depreciation. Sec. 48(a)(1). Depreciation is allowable on property subject to wear and tear or obsolescence and used in a trade or business or for the production of income. Sec. 167(a). The amount of this credit is limited to the percentage of a taxpayer's qualified investment in section 38 property. Sec. 46(a)(2)(A)(i). Qualified investment is a statutorily determined percentage of the basis of property placed in service. Sec. 46(c). Under section 48(d), the lessor of property, here Charta, may elect to pass through the credit to the lessee, here the partnerships. The lessee is treated as having acquired the property for its fair market value. A common threshold for allowance of the deductions and credits in issue is that the taxpayer must be engaged in a trade or business or in a transaction entered into for the production of income. In order to be engaged in either, the taxpayer must have a profit objective. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Jasionowski v. Commissioner, 66 T.C. 312, 318-319 (1976). Otherwise, *50 no credits are allowed, and deductions may be allowed only to the extent there is income from the activity. Sec. 183. This Court and others have commented on the "profit objective" requirement in many "tax shelter" cases. A representative sample of these cases was summarized in our opinion in Beck v. Commissioner, 85 T.C. 557, 569-570 (1985): : Essential to such a showing is a demonstration that petitioner had "an actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Fuchs v. Commissioner, 83 T.C. 79, 98 (1984); Dean v. Commissioner, 83 T.C. 56, 74 (1984). While a reasonable expectation of profit is not required, petitioner's objective of making a profit must be bona fide. Fox v. Commissioner, 80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinion sub nom. Zemel v. Commissioner, 734 F.2d 9 (3d Cir. 1984), *51 affd. without published opinion sub nom. Rosenblatt v. Commissioner, 734 F.2d 7 (3d Cir. 1984), affd. without published opinion sub nom. Kratsa v. Commissioner, 734 F.2d 6 (3d Cir. 1984), affd. without published opinion sub nom. Leffel v. Commissioner, 734 F.2d 6 (3d Cir. 1984), affd. without published opinion sub nom. Hook v. Commissioner, 734 F.2d 5 (3d Cir. 1984). * * * "Profit" in this context means economic profit, independent of tax savings. Herrick v. Commissioner, supra; Surloff v. Commissioner, 81 T.C. 210, 233 (1983). Whether petitioner possessed the requisite profit objective is a question of fact to be resolved on the basis of all the facts and circumstances. Elliott v. Commissioner, 84 T.C. 227, 236 (1985), and cases cited therein. Although no one factor is determinative, greatr weight must be given to objective facts than to petitioner's mere statement of his intent. Siegel v. Commissioner, 78 T.C. 659, 699 (1982); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2, Income Tax Regs. *52 * * * [Fn. ref. omitted.]
The regulations under section 183 list nine nonexclusive factors which may be used in evaluating profit objective. They are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Not all of these factors are applicable in every case and no one factor is controlling. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 33-34 (1979); sec. 1.183-2(b), Income Tax Regs.
Profit objective is determined at the partnership level, not at the individual partner level. Siegel v. Commissioner, 78 T.C. 659, 698 (1982); Brannen v. Commissioner, 78 T.C. 471, 501-504 (1982), *53 affd. 722 F.2d 695 (11th Cir. 1984); Goodwin v. Commissioner, 75 T.C. 424, 437 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982). In determining a partnership's profit objective, we focus on those individuals who actually conducted the partnership's affairs and whose expertise was relied on in making partnership decisions. Fox v. Commissioner, 80 T.C. 972, 1007-1008 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinion sub nom. Zemel v. Commissioner, 734 F.2d 9 (3d Cir. 1984), affd. without published opinion sub nom. Rosenblatt v. Commissioner, 734 F.2d 7 (3d Cir. 1984), affd. without published opinion sub nom. Kratsa v. Commissioner, 734 F.2d 6 (3d Cir. 1984), affd. without published opinion sub nom. Leffel v. Commissioner, 734 F.2d 6 (3d Cir. 1984), affd. without published opinion sub nom. Hook v. Commissioner, 734 F.2d 5 (3d Cir. 1984); Wildman v. Commissioner, 78 T.C. 943, 953-954 (1982); *54 Siegel v. Commissioner, supra at 698; Brannen v. Commissioner, supra at 512. Consequently, we focus our attention in the instant case on petitioner, who, as sole employee and controlling shareholder of Science and Industry Resources, Inc., effectively acted as general partner for both partnerships. The partnerships never subleased any of the systems it "leased" from Charta. Petitioner has failed to present credible evidence of any significant attempts to sublease the Perfect You systems. Only two of the systems were ever placed on a trial basis. The partnerships have not, in any year since their formation, generated any gross revenue with the exception of $ 350 reported by Med-Sciences in 1985. Petitioner had no expertise in the areas of computers, programming, medicine, or nutrition, and failed to consult or retain advisers with expertise in those areas. Petitioner has offered very little beyond his own testimony in support of his claim that the partnership activities were undertaken with a bona fide profit objective. We do not find petitioner's testimony credible. Statements made by petitioner in the partnership offering memoranda *55 and at trial were demonstrated to be without foundation. [4]
For example, petitioner has failed to establish any legitimate basis for the projected revenue figures contained in the partnership offering memoranda. The projections are based on charging patients $ 240 per visit. At trial, petitioner testified that Mr. Kogan charged $ 240 per visit to patients who were put on the system in the medical practice of Mr. Kogan's brother. He also stated that 125 patients were put on the system in one day. By contrast, Mr. Kogan stated that patients at his brother's medical practice, where the system was used, were charged approximately $ 50, and that patients would not be charged that full amount for subsequent visits. Petitioner failed to present evidence of negotiation of the lease price *56 of the systems. [5] In fact, there was a tremendous disparity between the fair market value of the systems and the price at which the partnerships leased them. *57 Respondent offered the testimony of Donald W. McEwen who has expertise in the valuation of computer software and hardware. Mr. McEwen evaluated the Perfect You system once in Tampa, Florida, in early 1985, and also an "updated" version in 1988, at Mr. Kogan's office in Las Vegas, Nevada. In appraising the system, Mr. McEwen provided printouts generated by the system to a group of registered dieticians with graduate degrees in nutrition for evaluation; compared the system with four other nutritionally oriented systems (hardware and software); interviewed medical personnel that had used the system on a trial basis; and considered the costs of developing a similar system from the start. Based on the foregoing, Mr. McEwen appraised the software at a maximum of $ 4,800 and the hardware at $ 8,415. Installation and on-site training was appraised at $ 1,700. We found that Mr. McEwen's testimony was credible. Mr. Kogan, who developed the Perfect You system, reviewed Mr. McEwen's appraisal and agreed that Mr. McEwen's software appraisal was accurate. We note that the partnerships insured all of their personal property, including the leased systems, under an insurance policy in the *58 face amount of only $ 18,000. Petitioner did not present evidence as to the fair market value of the systems at trial. Consequently, we find that there was no arm's-length negotiation and that the values of the systems were wildly inflated in an effort to secure tax benefits, i.e., pass through investment tax credit. Any claim of expected appreciation in the value of the leases to the partnerships cannot be seriously entertained. The partnerships paid fixed rent alone on the leased systems which was three times the $ 10,000 out-of-pocket cost to Di-Med. Such a lease price was based on the $ 198,000 purchase price "paid" by Charta. As previously stated, this purchase price was inflated. In light of petitioner's failure to conduct the partnerships' affairs in a businesslike manner, including failure to complete or file necessary organizational documentation; to negotiate reasonable lease rates; to seek advice of competent advisors; to secure an accurate appraisal of the systems; and the complete failure of the partnerships to generate any significant revenue, we find that the partnerships did not engage in the "leasing" transactions with a bona fide profit objective. Therefore, *59 they are not entitled to deductions under either section 162 or 212, nor are they entitled to the investment tax credit under section 38. Our holding with respect to this issue makes it unnecessary to address the remaining issues. [6]
Decisions will be entered for respondent. Footnotes
1. In our description of the transactions at issue, our use of the terms "sold", "leased", "purchased", or "entered into agreements of sale", "lease" or "purchase", is solely for convenience. We do not intend that our use of these terms ascribes validity to the transaction.↩
2. The transactions of Structured Shelters, Inc., were the subject of a previous opinion of this Court. See Rybak v. Commissioner, 91 T.C. 524↩ (1988).
3. All Rule references are to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the relevant periods.↩
4. We note that petitioner was convicted of felony assault of an IRS agent in 1985, in the Northern District of Ohio. The conviction was affirmed in United States v. Robert Plummer, 789 F.2d 435↩ (6th Cir. 1986).
5. Petitioner was being paid a commission by the lessor for systems leased by the partnerships and had no incentive to keep the price down. See Fox v. Commissioner, 80 T.C. 972, 1009 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinion sub nom. Zemel v. Commissioner, 734 F.2d 9 (3d Cir. 1984), affd. without published opinion sub nom. Rosenblatt v. Commissioner, 734 F.2d 7 (3d Cir. 1984), affd. without published opinion sub nom. Kratsa v. Commissioner, 734 F.2d 6 (3d Cir. 1984), affd. without published opinion sub nom. Leffel v. Commissioner, 734 F.2d 6 (3d Cir. 1984), affd. without published opinion sub nom. Hook v. Commissioner, 734 F.2d 5↩ (3d Cir. 1984).
6. We note that the parties' stipulation that neither partnership took delivery or possession of any of the systems prior to 1984 foreclosed allowance of the investment tax credit in 1983, regardless of the presence of a profit objective.↩